**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| CHRISTINA AU, | CIVIL CASE NO. 15-00019 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER ON OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| TSANG BROTHERS CORP., | |
| Defendant. | |

Before the court is Defendant Tsang Brothers Corporation's ("Tsang Bros.") Objection to Report and Recommendation. *See* ECF No. 39. The Magistrate Judge's Report and Recommendation ("Report") recommends that this court deny Tsang Bros.' Motion to Dismiss Counts Three and Four of Plaintiff Christina Au's ("Au") Complaint. R & R at 18, ECF No. 32. After reviewing the parties' submissions, and relevant caselaw and authority, the court hereby **ACCEPTS** in part the conclusions within the Report for the reasons stated herein.

## I.     BACKGROUND

### A.     Procedural History

On June 5, 2015, Au filed a Complaint against Tsang Bros. seeking compensatory and punitive damages for Defendant's violation of federal and Guam laws prohibiting gender discrimination. *See* Compl. at ¶ 1, ECF No. 1.

1

Count One of the Complaint alleges gender discrimination violation under 42 U.S.C. § 2000e *et. seq.* (Title VII of the Civil Rights Act of 1964). *See id.* at ¶¶ 1, 37-42. Count Two seeks punitive damages pursuant to 42 U.S.C. § 1981a. *See id.* at ¶¶ 43-44. Count Three sets forth a state law gender discrimination violation pursuant to 22 G.C.A. § 3302, and Count Four seeks punitive damages for said violation pursuant to 20 G.C.A. §§ 2120 and 22 G.C.A. § 3304. *See id.* at ¶¶ 1, 45-51.

On September 25, 2015, Tsang Bros. filed a Motion to Dismiss Counts Three and Four of Au's Complaint on the basis that she failed to file a timely administrative complaint upon the completion of Guam Department of Labor's ("GDOL") administrative proceedings. *See* Mot. Dismiss at 2, ECF No. 11. On October 12, 2015, Au filed her Opposition to the Motion to Dismiss. *See* Opp'n, ECF No. 16. On October 26, 2015, Defendant filed its Reply to Plaintiff's Opposition. *See* Reply, ECF No. 20.

The Motion to Dismiss Counts Three and Four was referred to the Magistrate Judge for a Report and Recommendation. After hearing the parties' argument, the Magistrate Judge recommends that this court deny Tsang Bros.' Motion. R. &. R. at 18, ECF No. 32.

Tsang Bros. timely filed an Objection to the Report, to which Au filed a responsive Memorandum in Support of the Report. *See* ECF Nos. 39 and 43.

**B. Factual Background**

Au was employed by Tsang Bros., a company that operates as a construction material sales business on Guam. *See* Compl. at ¶¶ 11, ECF No. 1, 14. Chung Ping Tsang, Au's husband, was a 20% shareholder in the business, along with other family members. *Id.* at ¶¶ 12-13.

In her Complaint, Au alleges that when Wing Tsang became president of the company in 2012, the environment of Tsang Bros. became crude and hostile towards her based on her gender. *Id.* at ¶¶ 23-28.

2

On or about February 17, 2014, Au received a Memorandum from Wing Tsang terminating her position as Office Manager with the company. *Id.* at ¶ 29. Shortly thereafter, she was locked out of the company and her employment was effectively terminated. *Id.* at ¶ 31.

Au filed a Charge of Discrimination with the GDOL based on gender discrimination in violation of Title VII of the U.S. Civil Rights Act of 1964 on July 3, 2014. *Id.* at ¶ 6.

During GDOL proceedings on or about October 14, 2014, Tsang Bros. representatives stated that Au "was fired for complicity in theft from the company." *Id.* at ¶ 35. Au contends these statements were untrue, and served as pretext to hide the real reason for the termination, which was discrimination. *Id.*

On December 15, 2014, the Fair Employment Practice Office of the GDOL sent a letter to Au informing her that it completed investigation of her Charge of Discrimination, and a preliminary finding for closure was made due to insufficient evidence substantiating her claim. Mot. Dismiss at Ex. B (Letter, Dec. 15, 2014), ECF No. 11-2. The GDOL sent her a Notice of Case Closure on December 23, 2014. Mot. Dismiss at Ex. C (Not. Case Closure, Dec. 123, 2014), ECF No. 11-3.

On March 13, 2015, Au received her statutory 90-day right to sue letter from the U.S. Equal Employment Opportunity Commission, Los Angeles District Office. Compl. at ¶ 7, Ex. A, ECF No. 1. This action followed.

## II. LEGAL STANDARDS

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) provides that, in response to a claim

3

for relief, a party may assert a defense of "failure to state a claim upon which relief can be granted" by way of motion. FRCP 12(b)(6). Whether a party has sufficiently stated a claim for relief is viewed in light of FRCP 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to Rule 8, a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). The pleading standard under Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). The court must engage in a two-step procedure to determine the plausibility of a claim. *Id.* at 678–79. First, the court must weed out the legal conclusions—that is "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—in the pleading that are not entitled to a presumption of truth. *Id.* at 678. Second, the court should presume the remaining factual allegations are true and determine whether the claim is plausible. *Id.* at 679.

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common sense" to determine the plausibility of a claim given the specific context of each case. *Id.* at 679.

## III.  DISCUSSION

### A.  Introduction.

#### 1.  The Underlying Motion to Dismiss.

Tsang Bros. moved to dismiss Au's claims arising under Guam law, specifically Counts

4

Three and Four of the Complaint for (1) failure to timely file an administrative complaint with the GDOL under Guam Law, and (2) failure to seek judicial review of GDOL's determination that there was no causal connection between her gender and her termination under Guam's Administrative Adjudication Law ("AAL"). Mot. Dismiss at 3, 5, ECF No. 11. Tsang Bros. argued that the statute of limitations set forth in 22 G.C.A. § 5206, which permits a person claiming to be aggrieved by an unlawful discrimination to file a Complaint with the GDOL within ninety (90) days of the discrimination, was applicable to her 22 G.C.A. § 3302 gender discrimination claim. Mot. Dismiss at 4, ECF No. 11.

Au opposed the motion, first arguing that Tsang Bros. misidentified the legal authority that her Third and Fourth claims were predicated upon. Opp'n at 1, ECF No. 16. These claims were brought pursuant to the provisions of Chapter 3 of Title 22 of the Guam Code Annotated, which specifically addresses only sex and age discrimination, rather than Chapter 5 of Title 22.[1] Opp'n at 1-2, ECF No. 16. Second, Au maintained that judicial redress for the alleged employment discrimination is permissible without the need to resort to available state and local administrative remedies. *Id.* at 2. Third, Au contended that the procedures, remedies, and requirements are different for Chapter 5 and Chapter 3, and that these differences were contemplated by the legislature. *Id.* at 4-6. Finally, Au stressed that canons of statutory construction support the interpretation of reading the two chapters harmoniously rather than voiding the other. *Id.* at 7-8.

In reply, Tsang Bros. argued that Au's reasoning: (1) was contrary to the plain language of Guam's statutory scheme and violates the *in pari materia* doctrine, (2) failed to consider Guam law's emphasis on exhaustion of administrative remedies, (3) was contrary to the Supreme

---

[1] Specifically, her Complaint states that her action is brought pursuant to 42 U.S.C. § 2000e et. seq. (Title VII of the Civil Rights Act of 1964), as amended, and pursuant to 22 G.C.A. §§ 3302 and 3304. *See* Compl. at ¶1, ECF No. 1.

5

Court of Guam's holding in *Barrett-Anderson v. Camacho*, 2015 Guam 20, (4) nullified Guam's administrative scheme and GDOL's authority to handle discriminatory practices in Guam, and (5) disregarded evidence of Au's attempt to avail herself of Guam's administrative process. Reply at 1-2, ECF No. 20.

## 2. Objection to the Report and Recommendation.

The Report recommends that this court should deny Tsang Bros.' Motion for the following reasons:

1) The administrative provisions of Chapter 5 of Title 22 apply only to administrative claims brought under Chapter 5 and do not apply to proceedings commenced under Chapter 3 of Title 22.

2) If the administrative provisions of Chapter 5 were found to apply:

   (a) Plaintiff has exhausted her administrative remedies by her filing of an administrative claim with GDOL and GDOL's subsequent investigation and denial of the claim on its merits. Defendant should not be permitted to argue a late filing if it was not originally raised as a defense in the administrative process; and

   (b) Plaintiff's election to first pursue and file an administrative remedy with GDOL coupled with her late filing was "illusory" since the administrative remedy was already barred by the statute of limitations. She was not barred, however, from filing this action under an alternative viable theory.

3) The Supreme Court of Guam decision in *Barrett-Anderson vs. Camacho* does not apply to this case.

R. &. R. at 18, ECF No. 32.

Tsang Bros. filed an Objection to the Report,[2] which first contends that the Magistrate Judge failed to focus on the Supreme Court of Guam's "endorsement of the doctrine of exhaustion of administrative remedies," even in situations where the administrative remedies at issue "do not afford a litigant all relief available." Obj. to R. &. R. at 1, ECF No. 39. This endorsement is reinforced by the legislative intent behind Chapters 3 and 5, which should be

---

[2] The Objections incorporates the arguments presented in its Motion, Reply, and oral arguments. Obj. to R. &. R. at 1, ECF No. 39.

interpreted in a manner that permits their congruence. *Id.* at 7-8. Second, the Objection asserts that Au's failure to timely exhaust administrative remedies renders her discrimination claims grounded on Guam law untimely. *Id.* at 1. Third, the Objection argues that the Report's finding that Tsang Bros.' waived its statute of limitation defense is unsupported by the law of the Ninth Circuit. *Id.* Fourth, the Objection challenges the Report's supposed failure to assess both phases of the GDOL process. *Id.* at 12-13. Fifth, the Objection contests the Report's finding that the administrative remedies at issue are illusory. *Id.* at 13.

Au's Memorandum in Support of the Report reiterates that Tsang Bros. improperly relies on principles within Chapter 5 in its efforts to get Au's Chapter 3 claims dismissed. Mem. in Supp. R. & R. at 1-2, ECF No. 43. Additionally, Au highlights that during arguments, the parties discussed an election of remedies argument. *Id.* at 2-3. Au agrees with the Report's conclusion that Chapter 5's remedies were illusory under the facts of this case due to the statute of limitations issue, thus precluding a finding that Au is barred from recovery under Chapter 3 for electing to avail herself of the remedies of Chapter 5. *Id.* at 3, 9-11. Furthermore, Au stresses that legislatures commonly provide different avenues of relief for a party aggrieved by employment discrimination and that the Guam legislature intended Chapters 3 and 5 to be read separately from each other. *Id.* at 4. Finally, Au suggests that this court certify the following question to the Supreme Court of Guam: "Does the procedure in Chapter 3 exist as an independent remedy to the procedure in Chapter 5?" *Id.* at 3.

This court invited Tsang Bros. to file a position on Au's suggestion for a certified question to the Supreme Court of Guam. Order, ECF No. 50. In response to that Order, Tsang Bros. argued "that there is controlling precedent such that the Supreme Court of Guam does not have the power to hear this case." Position Statement at 1, ECF No. 51.

**B. The Impact of the Administrative Procedures and Limitations Periods within Chapter 5 of Title 22 on Au's Claims Arising Under Chapter 3 of Title 22 of the**

**Guam Code Annotated.**

Tsang Bros.' Motion to Dismiss stressed that Au's Third and Fourth claims for relief for gender discrimination pursuant to 22 G.C.A. §§ 3302 and 3304 are timed-barred and must be dismissed because Au did not file her GDOL complaint within ninety (90) days her termination as required by 22 G.C.A. § 5206. Mot. Dismiss at 4-5, ECF No. 11. In Opposition, Au argued that Chapter 5's limitations requirements, which are broad and address a number of types of discrimination, are inapplicable to her Chapter 3 claims. Opp'n at 1-2, ECF No. 16. In her view, resorting to available state and local administrative remedies was not required prior to seeking judicial redress, and the different procedures, remedies, and requirements for Chapter 5 and Chapter 3 supports her view that the Guam legislature "contemplated two different procedures to remedy claims of employment discrimination." *Id.* at 2, 4-6.

Chapter 5 of Title 22 of the Guam Code Annotated permits a person to file a complaint with the GDOL, and sets a limitations period for doing so:

> A[] person claiming to be aggrieved by an alleged unlawful employment practice or discrimination, *may* file with the Department a verified complaint in writing. . . . No complaint shall be filed after the expiration of ninety (90) days after the alleged act of unlawful employment practice or discrimination.

22 G.C.A. § 5206 (emphasis added). Discrimination based on sex, including gender identity or expression, is included within Chapter 5's broad enumeration of unlawful employment practices:

> It *shall* be an unlawful employment practice or unlawful discrimination:
>
> (a) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment because of race, *sex (including gender identity or expression)*, age, religion, color, honorably discharged veteran and military status, sexual orientation, or ancestry . . . .

22 G.C.A. § 5201(a) (second emphasis added). Similarly, Chapter 3 of Title 22 encompasses gender discrimination, but unlike Chapter 5, addresses only age or sex discrimination. Specifically, section 3302 provides that:

> It shall be unlawful for an employer:

8

> (a) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's age or sex . . . .

22 G.C.A. § 3302. The enforcement mechanism for a plaintiff's claim under 22 G.C.A. § 3302 is through a direct action with the Superior Court of Guam, and there is no mention of using the administrative procedure within Chapter 5:

> (a) Any person alleging a violation of this Chapter may bring a civil action in the Superior Court for such legal or equitable relief as will effectuate the purposes of this Chapter.
>
> (b) In any action brought to enforce this Chapter, the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this Chapter, including without limitation judgments compelling employment, recovery of attorney fees, reinstatement or promotion or enforcing the liability for amounts deemed to be unpaid wages.

22 G.C.A. § 3304.

In this case, Au was effectively terminated on or about February 17, 2014, but did not file a complaint with the GDOL until July 3, 2014. Compl. at ¶¶ 6, 29, ECF No. 1; *see also* Mot. Dismiss at Ex. A (Charge of Discrimination, July 3, 2014), ECF No. 11-1. For her complaint with the GDOL to be timely under 22 G.C.A. § 5206, Au was required to file it within ninety (90) days after her alleged illegal termination, which would have been May 18, 2014. *See* 22 GCA § 5206. Au's GDOL complaint filed on July 3, 2014, however, was filed 46 days after the time permitted by statute to file a complaint with the GDOL.

In response to Tsang Bros.' argument, the Magistrate Judge determined that "[t]he administrative provisions of Chapter 5 of Title 22 apply only to administrative claims brought under Chapter 5 and do not apply to proceedings commenced under Chapter 3 of Title 22." R. &. R. at 18, ECF No. 32. Additionally, the Report concluded that Guam precedent cited by Tsang Bros. was inapplicable and did not squarely resolve this issue. *See id.*

Tsang Bros.' objection asserts, however, that the Report failed to address the extent of the

9

Guam's endorsement of the doctrine of administrative remedies, and asks this court to assess how the Supreme Court of Guam would resolve the issue. Obj. to R. &. R. at 1-4, ECF No. 39.

### 1. Guam's Legal Framework for Addressing Exhaustion of Administrative Remedies.

A district court is bound by the decisions of a state's highest court when analyzing questions of state law. *Glendale Associates, Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1154 (9th Cir. 2003) (citations omitted). "When the state's highest court has not squarely addressed an issue, [the court] must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treaties and restatements for guidance." *Id.* (citations and internal quotations marks omitted); *see also Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986), *opinion modified on denial of reh'g,* 810 F.2d 1517 (9th Cir. 1987) ("Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." (citations omitted)). A district court's assessment of how the highest state court would resolve a state law question should, in the absence of controlling state authority "look to existing state law without predicting potential changes in that law." *Schray v. Fireman's Fund Ins. Co.*, 402 F. Supp. 2d 1212, 1217 (D. Or. 2005) (citing *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir.2001), *cert. denied,* 534 U.S. 1133 (2002)).

### a. Supreme Court of Guam Opinions Addressing Exhaustion of Administrative Remedies.

Tsang Bros.' Objection to the Report provides extensive citations chronicling the history of Supreme Court of Guam opinions that "heavily enforce the doctrine of exhaustion of administrative remedies." Obj. to R. &. R. at 2-4, ECF No. 39. Looking to these decisions will guide this court's decision.

One of the earliest opinions, *Holmes v. Territorial Land Use Comm'n*, applied the

10

doctrine of exhaustion where Appellees "sought a writ of mandamus challenging the granting of a zoning change by the [Territorial Land Use Commission]." 1998 Guam 8 ¶¶ 1-2. The court found that the trial court improperly granted mandamus because the AAL "provides detailed and specific procedures for the adoption, repeal, recession or amendments of rules." *Id.* ¶¶ 8-9 (citations omitted). Appellees bypassed this procedure by going directly to court seeking an order from the court requiring promulgation of specific regulations and rules. *Id.* ¶ 8. Thus, mandamus was unavailable to the Appellees who "failed to pursue the administrative remedies available to him" because "[w]hen an administrative remedy has been provided by statute, this remedy must be exhausted before the courts will act." *Id.* ¶ 9 (citation omitted).

Subsequently, the Supreme Court of Guam explained the reasoning behind the exhaustion of administrative doctrine. *Carlson v. Perez*, 2007 Guam 6 ¶ 69. "The basic purpose . . . is to lighten the burden of overworked courts in cases where administrative remedies are available. *Id.* (citation and internal quotation marks omitted). The second justification offered by the court was "that even where the administrative remedy may not provide the specific relief sought by a party or resolve all the issues, exhaustion is preferred because agencies have the specialized personnel, experience and expertise to unearth relevant evidence and provide a record which a court may review." *Id.* (footnote and citation omitted). In *Carlson*, the petitioners sought to void and dismiss adverse employment actions. *Id.* ¶ 1. The Superior Court of Guam held that because petitioners "did not avail themselves of the remedy of appealing the Civil Service Commission's ("CSC") decision as a matter of law for judicial review . . . mandamus [was] not the appropriate relief." *Id.* (citation and internal quotation marks omitted). The Supreme Court of Guam affirmed, determining that the petitioner's failure to frame their petition to the Superior Court of Guam as an appeal of a CSC determination, and omission of the CSC as a named party "render[ed] fatal their argument that the Petition should be treated as a petition for judicial

11

review." *Id.* ¶¶ 68, 71 (Noting that the Superior Court of Guam's "holding reflects a judicial policy of encouraging litigants to exhaust their administrative and legal remedies before seeking a writ.").

In *Limtiaco v. Guam Fire Dep't*, the Supreme Court of Guam again recognized that "[m]andamus will not be granted where the petitioner has failed to pursue the administrative remedies available to him. When an administrative remedy has been provided by statute, this remedy must be exhausted before the courts will act." 2007 Guam 10 ¶ 27 (citing *Holmes*, 1998 Guam 8 ¶ 9). This is the case even where "some other statutory remedy," such as the Government Claims Act, applies. *Id.* In that case, the petitioner sought a writ of mandamus compelling the defendant to honor a Stipulation and Order re: Settlement issued by the CSC to award him back pay. *Id.* ¶ 1. The court affirmed the Superior Court's finding that petitioner failed to exhaust his administrative remedies prior to turning to the Government Claims Act, but noted that this issue was only relevant to the personnel matters of classified employees. *Id.* ¶ 29.

The court also acknowledged "that the two remedies may co-exist," but recognized that there are prerequisites to filing claims pursuant to the Government Claims Act. *Id.* ¶ 28 (quoting *Pacific Rock Corp. v. Department of Education* ("*Pacific Rock II* "), 2001 Guam 21 ¶ 1) (noting that in a procurement appeal, a final agency action was "required before filing a government claim in a procurement case."); *see also Sumitomo Construction Co., Ltd. v. Guam*, 2001 Guam 23 ¶ 15. Tsang Bros. highlights *Limtiaco's* recognition that "it was incumbent on the plaintiff to establish that he exhausted his administrative remedies under the Civil Service laws before turning to a claim under the Government Claims Act. Obj. to R. &. R. at 3, ECF No. 39 (citing *Limtiaco*, 2007 Guam 10 ¶ 27).

This case does not involve the mandatory administrative requirements of Civil Service Commission or procurement appeals prior to turning to the Government Claims Act.

Additionally, this case does not involve failure to abide by specific procedures for the adoption, repeal, recession or amendments of government agencies rules or regulations prior to seeking direct judicial relief. Nonetheless, Tsang Bros. believes that the Supreme Court of Guam's most recent opinion regarding exhaustion of administrative remedies, *Barrett-Anderson v. Camacho*,[3] signals that it would rule in Tsang Bros.' favor that Au failed to exhaust administrative remedies. Obj. to R. & R. at 3, ECF No. 39 (citing 2015 Guam 20 ¶ 24). It is Tsang Bros.' position that the Report was "too dismissive" of this precedent. *Id.* at 2-3 (citing *Barrett-Anderson*, 2015 Guam 20 ¶ 24). Thus, this court will determine whether *Barrett-Anderson v. Camacho* is instructive.

### a. The Applicability of *Barrett-Anderson v. Camacho*.

In *Barrett-Anderson*, the Supreme Court of Guam held that the Attorney General ("AG") was required to exhaust her administrative remedies prior to filing a declaratory action against John Camacho, Director of the Department of Revenue and Taxation ("DRT") to determine the validity of certain gaming regulations. *Barrett-Anderson*, 2015 Guam 20 ¶¶ 1-3, 24, 29. In that case, the AG sought a declaratory judgment declaring DRT's regulations concerning licensing of certain electronic gaming devices void under 7 G.C.A. § 26810. *Barrett-Anderson*, 2015 Guam 20 ¶¶ 12, 22. Section 26810 provides that:

> Any person interested under a deed, will, or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over, or upon property, or with respect to the location of the natural channel of a water course, may, in cases of actual controversy relating to the legal rights and duties of the respective parties, *bring an action in the court having jurisdiction for a declaration of his rights and duties in the premises*. . . . .

7 G.C.A. § 26801 (emphasis added).

---

[3] Failure to exhaust administrative remedies may deprive the court of subject matter jurisdiction. *Barrett-Anderson v. Camacho*, 2015 Guam 20 ¶ 32 (citing *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12 ¶ 23) (acknowledging, however, that certain judicially recognized exception such as the futility exception, confers jurisdiction to a court even when a party has failed to exhaust).

DRT moved to dismiss the action pursuant to 5 G.C.A. § 9309 on the basis that the AG failed to exhaust her administrative remedies. *Barrett-Anderson*, 2015 Guam 20 ¶¶ 12, 22. The trial court determined that the AG's claims were governed by 5 G.C.A. § 9309 of Guam's AAL, which requires "any interested person to *petition any agency directly for a declaratory ruling* concerning its regulations." *Barrett-Anderson*, 2015 Guam 20 ¶¶ 12, 22 (emphasis added) (citing 5 G.C.A. § 9308). Specifically, the declaratory judgment requested "may be rendered *only[4] after the petitioner has first requested the agency to pass upon the validity of the rule* in question and the agency has so ruled or has failed to rule within ninety (90) days." 5 G.C.A. § 9309. Ultimately, the trial court dismissed the AG's case without prejudice "[b]ecause [the AG] failed to exhaust [her] administrative remedies by failing to request Defendant DRT to pass on the validity of 3 [GAR][5] § 7114(a)(5)." *Barrett-Anderson*, 2015 Guam 20 ¶ 22 (alterations in original (citation and internal quotation marks omitted).

On appeal, the AG argued that her claims should be evaluated under 7 G.C.A. § 26801 rather than 5 G.C.A. § 9308. *Barrett-Anderson*, 2015 Guam 20 ¶ 23. The Supreme Court of Guam held that although 7 G.C.A. § 26810 appears to provide an avenue to the AG to challenge a regulatory scheme without the need to comply with administrative requirements when read in isolation, the provision must be examined within its context by looking at other related statutes. *Barrett-Anderson*, 2015 Guam 20 ¶ 24 (citing *Aguon v. Gutierrez*, 2002 Guam 14 ¶ 9).

In evaluating 5 G.C.A. § 9309, the court observed that upon "[r]eading the AAL holistically," section 9309 provided a comprehensive and more specific procedure to challenge the validity of DRT's regulations. *Barrett-Anderson*, 2015 Guam 20 ¶ 25. Specifically, "[s]ection 9309 of the AAL allows a court to declare an agency rule invalid if it finds that it

[4] The language of 5 G.C.A. § 9309, specifically the use of the words "only after," is clear that a request to the agency is a prerequisite to a declaratory ruling concerning Guam agency rules and regulations.

[5] "GAR" stands for Guam Administrative Rules and Regulations.

14

'violates provisions of law, exceeds the statutory authority of the agency or was adopted without compliance with statutory rule-making procedures.'" *Id.* ¶ 24 (quoting 5 G.C.A. § 9309(b)).

The court determined that the relief set forth in 5 G.C.A. § 9309(b) was "the exact relief sought by the AG," and that the doctrine of exhaustion of administrative remedies may not be circumvented by bringing a general action for declaratory relief under 7 G.C.A. § 26810. *See id.* (quoting *Bleeck v. State Bd. of Optometry*, 95 Cal. Rptr. 860, 871 (Ct. App. 1971).[6] The Magistrate Judge's Report found "it very significant that when comparing the more specific agency declaratory judgment statute (5 G.C.A. § 9309) with the general declaratory judgment statute (7 G.C.A. § 26810) under which the AG proceeded" that the Supreme Court of Guam determined that "the relief sought by the AG in § 26810 of Title 7 was the same relief provided in § 9309 of Title 5." R. & R. at 15, ECF No. 32. Comparing that principle to the facts of this case, the Magistrate Judge concluded that "[a] careful examination of the administrative provisions of Chapter 5 of Title 22 illustrates that Chapter 5 does not provide a relief akin to what [Au] seeks in her action against [Tsang Bros.] under Chapter 3." *Id.* at 15-16. In particular, Chapter 3 authorizes direct suit for gender discrimination, while Chapter 5 sets forth an administrative process that limits judicial review to a writ of mandate after AAL procedures

---

[6] In particular, the court determined that:

[T]he AAL provides the mechanism for challenging the validity of an agency rule by petitioning the relevant agency through its prescribed procedures. Section 9309, in turn, provides the mechanism for challenging the validity of an agency rule in the Superior Court, subject to the administrative exhaustion requirement. As the AG sought to challenge the validity of DRT's gaming device regulations in the Superior Court, her action was governed by the AAL's Section 9309.

*Barrett-Anderson*, 2015 Guam 20 ¶ 25.

Even though the Supreme Court of Guam held that the AG was bound by 5 G.C.A. § 9309, the court subsequently determined that it would have been futile to require the AG to exhaust her administrative remedies because the DRT "made it clear through its actions that it consider[ed] the relevant regulations to be valid." *Id.* ¶ 32 (footnote omitted) ("Under the futility exception, a party need not exhaust administrative remedies if the record reflects that it would be futile to do so." (citing *Blaz v. Cruz*, No. Civ.App. 84–0014A, 1985 WL 56592 at *4 (D. Guam App. Div. Apr. 29, 1985)).

15

are followed. *Id.* at 16.

Next, the Report noted that the AG bypassed the mandatory procedure set forth in 5 G.C.A. § 9309 and filed a direct declaratory judgment action. *See* R. & R. at 16, ECF No. 32. The administrative procedures of the GDOL do not require an aggrieved employee to file an administrative complaint prior to filing a direct action under 22 G.C.A. §§ 3202 and 3304 in court unlike 5 G.C.A. § 9309, which specifies that a request to the agency is a prerequisite to a declaratory judgment through use of the words "only after." *See* 5 G.C.A. § 9309 ("The declaratory judgment may be rendered *only after* the petitioner has first requested the agency to pass upon the validity of the rule in question . . . .").

Unlike the broad scope of 7 G.C.A. § 26810, which confers the right to seek declaratory relief to the rights and obligations of any interested person under a written instrument, 22 G.C.A. § 3304 is a specific and narrow statutory provision permitting direct civil suit to employees subject to sex and age discrimination. Accordingly, this court **ADOPTS** the Report's conclusion that "the exhaustion of administrative rights ruling *Barrett-Anderson* . . . does not apply to [this] . . . case" because Chapters 3 and 5 involve "two distinct and separate statutory schemes with two different reliefs available." *See* R. & R. at 17-18, ECF No. 32.

### b. Remedies Available in Chapter 3 and Chapter 5.

The Report also identified subtle differences in the damage provisions of Chapter 3 and Chapter 5. *Id.* at 17. Section 5209 sets forth the following remedies: (1) "an order requiring [the employer] to cease and desist from such unlawful employment practice or discrimination;" (2) "to take such affirmative action, including (but not limited to) hiring" the employee; (3) reinstating the employee or upgrading the employees, with or without back pay; and/or (4) restoring the employee "to membership in any respondent labor organization." *See* 22 G.C.A. § 5209; *see also* R. & R. at 17, ECF No. 32.

16

Section 3304, on the other hand, permits "legal or equitable relief as may be appropriate to effectuate the purposes of this Chapter, including without limitation [1] judgments compelling employment, [2] recovery of attorney fees, [3] reinstatement or [4] promotion or [4] enforcing the liability for amounts deemed to be unpaid wages." *See* 22 G.C.A. § 3304; *see also* R. & R. at 17, ECF No. 32. Unlike section 5209, attorneys' fees are available for a successful plaintiff under section 3304, and the court has broad authority to grant legal and equitable relief.

Tsang Bros. find it immaterial that section 3304 permits additional measures of relief. Obj. R. & R. at 5, ECF No. 39. It points to *Carlson*, where the Supreme Court of Guam opined that:

> [E]ven where the administrative remedy may not provide the specific relief sought by a party or resolve all the issues, exhaustion is preferred because agencies have the specialized personnel, experience and expertise to unearth relevant evidence and provide a record which a court may review. If an employee is classified (as these litigants claim they were), then that employee should appeal any adverse action taken by his employer to the CSC, and if dissatisfied with the CSC decision, the employee may seek judicial review in the Superior Court.

2007 Guam 6 ¶ 69 (citation and footnote omitted).

Although it is true that resorting to the administrative process is required despite the availability of additional remedies in cases such as *Carlson* case, which involved a classified employee who was required to appeal an adverse action through the mandatory Rules of Procedure for Adverse Action Appeals, Tsang Bros.' argument is misplaced. This case does not involve mandatory Rules of Procedure for Adverse Action Appeals as did *Carlson*. Moreover, in contrast to the AG in *Barrett-Anderson*, Au is not attempting to use a general declaratory statute to circumvent administrative requirements. *See* 2015 Guam 20 ¶ 24. Hence, the Report correctly notes the importance of the different available remedies for a plaintiff seeking relief under section 3304 as opposed to section 5209.

### c. Legislative History and Intent.

Tsang Bros.' Objection to the Report additionally asserts that its argument is supported

17

by Legislative history and intent, specifically that "[t]he Guam Legislature created Chapter 5's administrative scheme to allow GDOL an opportunity to address discrimination in the workplace," to assist overworked courts, and to offer specialized personnel with relevant knowledge and expertise. Obj. to R. & R. at 6, ECF No. 39. To address Tsang Bros.' argument, this court will turn to Guam jurisprudence relevant to statutory interpretation.

The Supreme Court of Guam has said that its "[d]uty is to interpret statutes in light of their terms and legislative intent." *People v. Kim*, 2015 Guam 25 ¶ 13 (quoting *People v. Flores*, 2004 Guam 18 ¶ 8). "When interpreting a statute, 'the plain language of a statute must be the starting point.'" *Barrett-Anderson*, 2015 Guam 20 ¶ 23 (quoting *Aguon*, 2002 Guam 14 ¶ 6). In construing the meaning of a statute, a court is tasked with determining "whether the language is 'plain and unambiguous' by reference to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* Additionally, "in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id.* (quoting *Sumitomo Constr., Co.*, 2001 Guam 23 ¶ 17). Absent "clear legislative intent to the contrary, the plain meaning prevails." *Kim*, 2015 Guam 25 ¶ 13 (quoting *Flores*, 2004 Guam 18 ¶ 8).

As stated above, the plain language of section 3304 permits direct civil suit to employees subject to sex and age discrimination. 22 G.C.A. § 3304. Although the plain language seems clear, determining whether there is any contrary legislative intent would be prudent.

Tsang Bros. points out that the Guam legislature first enacted a Chapter regarding "Employment Practices; Unlawful Discrimination" in 1969 with Guam Pub. L. 9-254. *See* Obj. to R. & R. at 6, ECF No. 39. Looking to Guam Pub. L. 9-254, there does not appear to be any notes elucidating the Guam legislature's intent, although Tsang Bros. contends that its enactment "recognized the policy of deferring to an agency specialized in handling discriminatory

18

practices." Obj. to R. & R. at 6, ECF No. 39.

Tsang Bros. also argues that the jurisdiction conferred to GDOL by 22 G.C.A. § 5205 will be bypassed in permitting a direct civil action, which in turn will burden overworked courts without the benefit of the GDOL's expertise. *Id.* Moreover, Tsang Bros. asserts that the objective of Chapter 3 were primarily aimed at prohibiting age rather than gender discrimination. *Id.* at 7 (citing Pub. Law No. 15-17). The three objectives enumerated by the legislature are all aimed at addressing age discrimination, including: (1) "ensur[ing] that middle aged and older works have the opportunity to continue productive employment" as long as they are able and willing, (2) eliminating "unrealistic employment or retirement policies based on age regardless of potential for job performance," and (3) preventing "unemployment and resulting deterioration of skill, morale, health and employer acceptability," which the legislature recognized was a problem on Guam. *Id.* at 7-8 (citing Pub. Law No. 15-17).

Tsang Bros. is correct that the legislative objectives enumerated in Pub. L. No. 15-17 are aimed to combat age rather than gender discrimination. Yet gender discrimination is nonetheless specifically highlighted in Chapter 3. Even though Tsang Bros. stresses that the inclusion of gender discrimination "appears to be an afterthought," the fact remains that the plain language of Chapter 3 permits direct civil action for gender discrimination. *See* Obj. to R. & R. at 7-8, ECF No. 39; *see also* 22 G.C.A. § 3304. There is nothing within the legislative history of Chapter 3 suggesting that a plaintiff filing an action for age discrimination is permitted to seek judicial relief while one seeking direct judicial redress for gender discrimination is subject to the administrative procedure of Chapter 5.

Au advances plain language arguments as well and urges that Chapter 3 has its own employment standards independent of Chapter 5. Mem. in Supp. R. & R. at 6, ECF No. 43. She contends that these independent standards are evidenced by subsection 3304(a) language

19

allowing direct civil action for legal or equitable relief against a person violating "this Chapter." Mem. in Supp. R. & R. at 6, ECF No. 43 (citing 22 G.C.A. § 3304).  Accordingly, violations under other Chapters, such as Chapter 5, are not cognizable under subsection 3304(a).

Deference to plain meaning prevails, unless "'the result would lead to absurd or impractical consequences, untenable distinctions, or unreasonable results.'"  *Sumitomo Const., Co.*, 2001 Guam 23 ¶ 17 (quoting *Bowlby v. Nelson,* Civ. No. 83–0096A, 1985 WL 56583, at *2 (D. Guam App. Div. Sept. 5, 1985)).  Tsang Bros. has not specifically addressed whether deference to the plain meaning would lead to absurd, impractical, untenable, or unreasonable results.

On the contrary, it would be absurd to require a plaintiff to follow the procedures of Chapter 5 as a prerequisite to Chapter 3.  As Au noted during oral arguments, Chapter 5 does not provide a mechanism to reach the remedies available in Chapter 3.  Thus, the plain language of section 3304 supports Au's right to seek direct judicial redress under Chapter 3, and there is nothing in the legislative history mandating otherwise.

### d.   The Doctrine of *In Pari Materia*.

Tsang Bros. also asserts that canons of statutory construction, namely the doctrine of *in pari materia*, mandates that Chapters 3 and 5 must work together.  *See* Obj. to R. & R. at 8, ECF No. 39.  In particular, Tsang Bros. argues that "[a]llowing the administrative process to precede a civil action falls in line with the goals of the doctrine of exhaustion of administrative remedies."  *Id.* at 9.

In response, Au suggests that Chapters 3 and 5 cannot be squared because Chapter 5 does not permit a trial *de novo* in court.  *See* Mem. in Supp. R. & R. at 8, ECF No. 43.  Additionally, she contends that it is not inconsistent for a legislature to provide two different avenues of relief for employees aggrieved by employment discrimination, one being judicial (Chapter 3) and the

20

other administrative (Chapter 5).  *Id.* at 4, ECF No. 43.

"[S]everal . . . states do not require exhaustion of administrative remedies before bringing an employment discrimination claim."  Matthew D. Miko, *Heurtebise v. Reliable Business Computers, Inc.*, 12 Ohio St. J. on Disp. Resol. 511, 519 n. 59 (1997) (noting that Michigan, Rhode Island, Missouri, and West Virginia do not require exhaustion).[7]  For example, in *Elek v. Huntington Natl. Bank*, the Supreme Court of Ohio held that where a separate Ohio antidiscrimination statute permitted an independent civil action to redress physical disability discrimination, and no other provision conferred a direct right of civil action to victims of handicap discrimination, there was no conflict or redundancy in the law.  573 N.E.2d 1056, 1058 (1991).  The court also turned to the canon of statutory construction that a specific provision usually prevails over a general provision.  *Id.*  In particular, the language of the statute at issue "show[ed] that when the legislature wants to provide legal relief (and hence a right to a jury) in addition to equitable relief, it uses specific language to do so."  *Id.* (citations omitted).

Here, the Guam legislature has similarly conferred a specific direct right of civil action for victims of age and gender discrimination through 22 G.C.A. § 3304.  Like *Elek*, the Guam legislature provided legal relief in the form of a right to a civil action using specific language. *See id.*  There is nothing within the language of Chapter 3 or Chapter 5 suggesting that those two avenues are mutually exclusive, and that a victim of gender discrimination can proceed through judicial action as an alternative to initiating administrative action.  *See Price v. Boone Cty. Ambulance Auth.*, 337 S.E.2d 913, 916 (1985) (footnote and citation omitted) (noting that there are some circumstances where administrative and judicial enforcement are mutually exclusive).

---

[7] A law review article cited by Au provides a survey of states providing private right of action that is not predicated on exhaustion of administrative remedies in the context of refusing a plaintiff prescription contraceptives. *See* Charu A. Chandrasekhar, *Rx for Drugstore Discrimination: Challenging Pharmacy Refusals to Dispense Prescription Contraceptives Under State Public Accommodations Laws*, 70 Alb. L. Rev. 55, 73 n.52-54 (2006).  It seems that Guam has provided these alternative mechanisms in enacting Chapters 3 and 5.

21

Hence, Chapters 3 and 5 can exist independent of each other, and Au was not required to follow the procedures of Chapter 5 for her Chapter 3 claims. Therefore, the court **ADOPTS** the Report's conclusion that "[t]he administrative provisions of Chapter 5 of Title 22 apply only to administrative claims brought under Chapter 5 and do not apply to proceedings commenced under Chapter 3 of Title 22." *See* R. & R. at 18, ECF No. 32.

### C. Waiver of the Statute of Limitations Defense.

Tsang Bros.' Motion to Dismiss argued that the statute of limitations set forth in 22 G.C.A. § 5206, which permits a person claiming to be aggrieved by an unlawful discrimination to file a Complaint with the GDOL within ninety (90) days of the discrimination, is applicable to her 22 G.C.A § 3302 gender discrimination claim. Mot. Dismiss at 4, ECF No. 11.

The Report states that Tsang Bros.' argument that Au "did not exhaust her administrative remedies because she did not file her complaint within 90 days of the unlawful action is unavailing because GDOL proceeded to investigate and determine the case on its merits." R. & R. at 10, ECF No. 32. Consequently, the Report suggests that (1) " GDOL . . . waived or extended the filing time requirement," and/or (2) "Defendant may have waived the untimely filing with GDOL" because "[t]here is no indication on the record that [Tsang Bros.] sought a dismissal of the state law claim because it was untimely filed with GDOL." *Id.* (citation omitted).

Tsang Bros.' Objection challenges the Report's suggestion that GDOL and/or Tsang Bros. waived the issue of timeliness. Obj. to R. &. R. at 9, ECF No. 39. This particular recommendation, however, was conditioned on this court determining that the administrative provisions of Chapter 5 were applicable. *See* R. & R. at 18, ECF No. 32. As the court has determined that those administrative provisions are not applicable to discrimination claims brought pursuant to Chapter 3, Tsang Bros.' objections regarding the waiver issue are moot.

**D. Au's Opportunity to Review the GDOL's Decision.**

In addition to its argument that Au's claim before the GDOL was untimely pursuant to 2 G.C.A. § 5206, Tsang Bros. contends that Au failed to seek judicial review of the GDOL's decision within 30 days as required by 5 G.C.A. § 9241. Obj. R. & R. at 13, ECF No. 39. The argument is more developed in its Motion to Dismiss. There, Tsang Bros. argued that "if Au wished to appeal GDOL's finding of no causal connection between her gender and her termination, she was required to seek judicial review under Guam's AAL" by January 21, 2015. Mot. Dismiss at 5, ECF No. 11; *see also* 22 G.C.A. § 5208 ("Hearings held under the provisions of this Chapter shall be conducted in accordance with the Administrative Adjudication Law."). Judicial review under the AAL:

> [M]ay be had by filing a petition in the Superior Court for a writ of mandate in accordance with the provisions of the Code of Civil Procedure. Except as provided in this Section any petition shall be filed within thirty (30) days after the last day on which reconsideration can be ordered. . . .

5 G.C.A. § 9241.

The Report concluded that the 30-day period was inapplicable because the GDOL conducted only an investigation of Au's charge and never reached an adversarial hearing procedure. *See* R. & R. at 12-13, ECF No. 32. The GDOL also never notified Au of her right to appeal its decision or right to seek judicial review under the AAL. *See* Mot. Dismiss at Ex. B (Letter, Dec. 15, 2014), ECF No. 11-2; *see also* 22 G.C.A. § 5209 (requiring an order issued by the GDOL to reference relevant provisions of the AAL regarding a party's right to appeal). Accordingly, the Magistrate Judge determined that Au was not barred from filing a subsequent action under Chapter 3 because "the administrative provisions of Chapter 5 do not expressly allow judicial review of a preliminary finding by GDOL when a complaint is unsubstantiated and GDOL has not conducted a hearing." R. & R. at 13, ECF No. 32.

This particular recommendation, however, was conditioned on this court determining that

23

the administrative provisions of Chapter 5 were applicable. *See* R. & R. at 18, ECF No. 32. As the court has determined that those administrative provisions are not applicable to discrimination claims brought pursuant to Chapter 3, Tsang Bros.' objection regarding Au's failure to timely appeal the GDOL's decision pursuant to the AAL is moot.

**E. Au's Election of the Administrative Remedy was Illusory.**

The Report acknowledged that Au elected to file an administrative claim with the GDOL, but noted that if that administrative claim was barred as untimely, then that remedy was illusory because the elected remedy was unviable. R. & R. at 11, ECF No. 32. Tsang Bros.' Objection argues that Guam's administrative remedies are not illusory because they "provide[] concrete and effective measures to curb discrimination." Obj. R. & R. at 15, ECF No. 39.

Au is puzzled by Tsang Bros.' assertion, but deduces that Tsang Bros.' Objection is essentially arguing that if this court determines "that the remedies of Chapter 3 are separate and independent of the remedies of Chapter 5, [Au][8] elected the remedies of Chapter 5 to the exclusion of those in Chapter 3." Mem. in Supp. R. & R. at 9 n.3, ECF No. 43. Likewise, Au is perplexed by Tsang Bros.' suggestion that the Report appears to make Chapter 5's remedies illusory independent of any election of remedies made by Au. *Id.*

Tsang Bros' argument was more clearly articulated in its Reply to the Motion to Dismiss, and was discussed during oral argument before the Magistrate Judge. *Id.* at 2; Reply Mot. Dismiss at 9, ECF No. 20. In its Reply, Tsang Bros. argued that by electing to file her original Charge of Discrimination with the GDOL, Au is required to follow Chapter 5's procedures, which "includ[e] the timing for bringing a charge of discrimination, and the timing for bringing a petition for judicial review if she is unsatisfied with the agency's decision." Reply Mot. Dismiss at 9, ECF No. 20.

---

[8] Au's brief refers to Tsang Bros.' election of remedies, but this is likely a typographical error because it must have been plaintiff who elected any remedies. Mem. in Supp. R. & R. at 9, n.3, ECF No. 43.

24

The election of remedies doctrine deals with "whether an employee's election of a nonjudicial remedy for employment discrimination precludes election of a judicial remedy." Meira Schulman Ferziger, *Pursuit of Nonjudicial Remedy for Employment Discrimination Amounting to Election Against Judicial Remedy*, 103 A.L.R.5th 557 (2002). Not all jurisdictions follow the rule, but "[i]n states that follow the election of remedies rule, an employee who files a charge of discrimination with the statutorily designated state civil rights agency is considered to have elected an administrative remedy, and is generally precluded from pursuing a judicial remedy under the applicable state antidiscrimination law." *Id.*

The Report noted that during oral argument, Au argued that even if the court concluded that she "failed to exhaust her administrative remedies under Chapter 5 because she filed her state law administrative claim late . . . she is not barred from filing an action under Chapter 3 because her remedy under Chapter 5 was illusory." R. & R. at 11, ECF No. 32 (quoting *Capogeannis v. Superior Court*, 15 Cal. Rptr. 2d 796, 805–06 (Ct. App. 1993)). Both Au and the Report relied on *Capogeannis*, wherein the court held that plaintiffs were not bound by their election of a remedy barred by the statute of limitations because that remedy was illusory:

> But even were we to assume that the Capogeannises had purported to elect a theory of permanent nuisance, we would conclude that the Capogeannises could not be deemed bound because the purported election would have been illusory: At the time the Capogeannises filed their complaint a theory of permanent nuisance was already barred by the statute of limitations defense that both defendants promptly asserted, and thus the Capogeannises in fact had no meaningful election to make. At least since *Agar v. Winslow* (1899) 123 Cal. 587, 590–591, 56 P. 422, California courts have made clear that a plaintiff's decision to pursue, even to a defense judgment, a theory that was not available to him or her at the time of suit will not bar subsequent pursuit of a viable alternative theory. (Cf. generally 3 Witkin, Cal.Procedure (3d ed. 1985) Actions, §§ 143–144, pp. 172–174.)

R. & R. at 11, ECF No. 32 (quoting *Capogeannis*, 15 Cal. Rptr. 2d at 805–06). The Report determined that Au had no meaningful election to make between Chapters 3 and 5 at the time she filed her claim with the GDOL due to the statute of limitations. *See id.* Thus, Au's subsequent suit in this court, predicated on an alternative viable theory under Chapter 3, was not barred

25

under the principles articulated in *Capogeannis*. *See id.*

Tsang Bros. asserts that *Capogeannis* is inapplicable to this case because it did not involve administrative remedies, or the requirement to exhaust administrative remedies. Obj. R. & R. at 13, ECF No. 39. Moreover, it maintains that an administrative remedy can only be considered illusory if it lacks effectiveness. *Id.* at 14. For example, in *SJCBC, LLC v. Horwedel*, the court concluded the administrative review procedure for medical marijuana dispensary operators seeking a writ of mandate challenging the county department of planning and code enforcement's nuisance abatement orders because the administrative review procedure was illusory. 201 Cal. App. 4th 339, 344, 348–49 (Ct. App. 2011), *as modified* (Dec. 21, 2011). Specifically, the "petitioners could not initiate the administrative process to challenge the validity of the compliance orders" that they were supposedly required to exhaust. *Id.* at 349. The court also noted that exhaustion of remedies is not required where the administrative remedy is "wholly lacking." *Id.* at 348 (citations and internal quotation marks omitted).

Tsang Bros. also cites *Kotlarich v. Mayor & Council of Borough of Ramsey*, which holds that exhaustion of remedies is not required where the administrative remedy itself is illusory. Obj. R. & R. at 13, ECF No. 39 (citing 144 A.2d 279, 290 (App. Div. 1958)).

The Report appears to focus on the issue of whether the relief available to Au was illusory because her claim with the GDOL was untimely, while Tsang Bros. seems to argue that the relief generally afforded under Chapter 5 is not illusory when Chapter 5's procedures are followed. The arguments offered by Tsang Bros. appear to disregard that this issue initially arose in the context of whether Au was barred from recovering under Chapter 3 because she elected a Chapter 5 remedy by filing her claim with the GDOL. *See* Reply Mot. Dismiss at 9, ECF No. 20.

In this case, Chapter 5's procedures were not followed because Au's Charge of

26

Discrimination was filed with the GDOL 46 days after the time permitted by 22 G.C.A. § 5206. Thus, the Report appropriately concluded that the election of remedies doctrine does not bar her from pursuing an action in this court under Chapter 3 even though she initiated claims with the GDOL pursuant to Chapter 5.

### F. Certification to the Supreme Court of Guam.

Even though this court has the power to adjudicate her state law discrimination claims, Au suggests that this court certify the following question to the Supreme Court of Guam: "Does the procedure in Chapter 3 exist as an independent remedy to the procedure in Chapter 5?" Mem. in Supp. R. & R. at 3, ECF No. 43. Tsang Bros. contends, however, "that there is controlling precedent such that the Supreme Court of Guam does not have the power to hear this case." Position Statement at 1, ECF No. 51.

When a federal claim has "substance sufficient to confer subject matter jurisdiction," this court has the discretion to exercise its pendent jurisdiction over state law claims if "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26 (1966) (citation omitted). As this court has subject matter jurisdiction over Au's Title VII claims, and the Guam state law claims derive from the same underlying allegation of gender discrimination, this court has the discretionary power to adjudicate Au's state law claims.

In deciding Au's state law claims, this court is bound by the relevant decisions from the Supreme Court of Guam, and to the extent that court has not addressed an issue, this court must predict how it would rule. *See Glendale Associates, Ltd.*, 347 F.3d at 1154 (9th Cir. 2003) (citations and internal quotations omitted).

The court has analyzed the authorities presented by the parties, and has determined, as discussed above, that the exhaustion of administrative rights ruling *Barrett-Anderson* does not

apply to this case because Chapters 3 and 5 involve two distinct and separate statutory schemes with two different types of relief available. *See* R. & R. at 17, ECF No. 32. Accordingly, this court exercises its discretion to adjudicate Au's state law claims through its pendent jurisdiction, and declines to certify the issues presented herein to the Supreme Court of Guam.

## IV. CONCLUSION

For the foregoing reasons, the court hereby this **ACCEPTS** in part the Magistrate Judge's recommendations within the Report to **DENY** Tsang Bros' Motion to Dismiss Counts Three and Four of Au's Complaint. Specifically, this court:

- **ACCEPTS** the Report's conclusion that the exhaustion of administrative rights ruling *Barrett-Anderson* does not apply to this case;
- **ACCEPTS** the Report's conclusion that the administrative provisions of Chapter 5 of Title 22 apply only to administrative claims brought under Chapter 5 and do not apply to proceedings commenced under Chapter 3 of Title 22.

As the court has determined that Chapter 5 administrative provisions are not applicable to discrimination claims brought pursuant to Chapter 3, Tsang Bros.' objections regarding the waiver issue and Au's failure to timely appeal the GDOL's decision pursuant to the AAL are **MOOT**. Furthermore, this court exercises its discretion to adjudicate Au's state law claims through its pendent jurisdiction, and declines to certify the issues presented herein to the Supreme Court of Guam.

**SO ORDERED.**



/s/ **Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Feb 15, 2017**